TRAXLER, Circuit Judge,
concurring in part and dissenting in part:
The parties in this case agreed to arbitrate their disputes in accordance with the commercial arbitration rules of the American Arbitration Association, and notice of the commencement of arbitration proceedings was provided to the Cuns and SM Property Management (collectively, the “Owners”) in accordance with those rules. Given the exceedingly deferential standard governing judicial review of commercial arbitration awards, I believe that the district court erred by vacating on grounds of insufficient notice the arbitration award entered against the Owners. Accordingly, I respectfully dissent from the affirmance of that aspect of the district court’s opinion.[1]
I.
The Federal Arbitration Act (“FAA”), 9 U.S.C.A. §§ 1-16 (West 1999 & Supp. 2007), establishes a strong federal policy favoring arbitration. See, e.g., Moses H. *212 Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). “A policy favoring arbitration would mean little, [however], if arbitration were merely the prologue to prolonged litigation.” Remmey v. Paine-Webber, Inc., 32 F.3d 143, 146 (4th Cir.1994). Thus, in order “to preserve the benefits of arbitration,” Apex Plumbing Supply, Inc. v. U.S. Supply Co., 142 F.3d 188, 193 n. 5 (4th Cir.1998), judicial review of commercial arbitration awards is “substantially circumscribed.” Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 234 (4th Cir.), cert. denied, — U.S. —, 127 S.Ct. 434, 166 L.Ed.2d 308 (2006). “[T]o allow full scrutiny of such awards would frustrate the purpose of having arbitration at all — the quick resolution of disputes and the avoidance of the expense and delay associated with litigation.” Apex Plumbing Supply, 142 F.3d at 193.
A federal court may vacate an arbitration award only if the moving party sustains “the heavy burden of showing one of the grounds specified in the [FAA] or one of certain limited common law grounds.” Three S Del., Inc. v. DataQuick Info. Sys., Inc., 492 F.3d 520, 527 (4th Cir.2007). Under the FAA, a federal court may vacate an arbitration award if (1) “the award was procured by corruption, fraud, or undue means”; (2) “there was evident partiality or corruption in the arbitrators”; (3) the arbitrator was guilty of misconduct or misbehavior in conducting the hearing in a manner which prejudiced a party’s rights; or (4) the arbitrator “exceeded [his] powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.” 9 U.S.C.A. § 10(a) (West Supp.2007).
“The permissible common law grounds for vacating such an award ... include those circumstances where an award fails to draw its essence from the contract, or the award evidences a manifest disregard of the law.” Patten, 441 F.3d at 234. An award fails to draw its essence from the contract if the “arbitrator has disregarded or modified unambiguous contract provisions or based an award upon his own personal notions of right and wrong. An arbitration award, however, does not fail to draw its essence from the agreement merely because a court concluded that an arbitrator has misread the contract.” Three S Del., 492 F.3d at 528 (citation and internal quotation marks omitted).
II.
The Franchise Agreement in this case provides that “[a]ll notices required or permitted under this Agreement” must be sent to Choice at a specified address and to the Owners at the address of the designated representative as defined in the Franchise Agreement. J.A. 15. The Owners assert that this provision obligated Choice to send notice of the arbitration proceedings to the address of the designated representative as identified in the Franchise Agreement. The arbitration notice was not sent to that address. Instead, in accordance with the AAA’s rules, the notice was sent to the Owners’ last known addresses — the addresses Choice just a few months prior had used to successfully serve the Owners with the summons and complaint in its breach of contract action. Because Choice did not send the arbitration notice to the address of the designated representative, the Owners contend that the arbitration award did not draw its essence from the Franchise Agreement and that the district court properly vacated the award.
In Gingiss International, Inc. v. Bormet, 58 F.3d 328 (7th Cir.1995), however, the Seventh Circuit rejected a similar claim about the import of a contractual notice provision that was largely identical *213 to the notice provision at issue in this case. In Gingiss, a franchisor instituted arbitration proceedings against a former franchisee seeking damages for breaches of the franchise agreement. See id. at 330-31. The franchisor sent notice of the arbitration to the officers of the franchisee corporation at a post office box to which it had previously sent correspondence to the officers. The officers had regularly responded to the correspondence that was sent to that post office box. The American Arbitration Association also sent letters regarding the arbitration proceeding to that address. As in this case, none of the letters sent by the Franchisor or the AAA to that address were ever returned to the sender. See id. at 331. The officers did not appear in the arbitration proceedings, and the arbitrator awarded the franchisor judgment against the officers. When the franchisor sought to confirm the arbitration award in federal court, the officers appeared and argued that the award should be vacated. The district court confirmed the award, and the officers appealed. See id.
On appeal, the officers contended, as the Owners do here, that the franchise agreement required notices to be sent to an address different from the post office box used by the franchisor. The Seventh Circuit rejected that reading of the contract:
The [officers’] reliance on section eighteen of the franchise agreement, which provided that ‘all written notices permitted or required to be delivered by the provisions of this Agreement’ shall be delivered by hand or by registered or certified mail, is also misplaced. A document should be read to give effect to all its provisions and to render them consistent with each other. Section eighteen, by its terms, applied only to notices which were required to be sent under the franchise agreement, such as default or termination notices. The arbitration clause, which is contained in section sixteen of the agreement, governed the notice procedures in the arbitration.
Id. at 333 (emphasis added; citation and internal alteration omitted). The Seventh Circuit thus concluded that the arbitration award was valid and that the district court properly confirmed the award.
Gingiss, of course, is not binding on this court. It is nonetheless relevant that the Seventh Circuit’s understanding of the meaning of a functionally identical contractual notice provision is diametrically opposed to the interpretation urged by the Owners in this case. As noted above, a court may conclude that an arbitration award fails to draw its essence from the contract if the arbitrator disregarded unambiguous contract terms. See Three S Del., 492 F.3d at 528. The differing judicial interpretations of largely identical notice provisions at the very least suggests that the notice provision in this case did not unambiguously require the arbitration notice to be sent to the address of the designated representative. See Sullins v. Allstate Ins. Co., 340 Md. 503, 667 A.2d 617, 624 (Md.1995) (“[C]onflicting interpretations of policy language in judicial opinions is not determinative of, but is a factor to be considered in determining the existence of ambiguity.”);[2] see also Bankwest v. Fidelity & Deposit Co. of Md., 63 F.3d 974, 978 (10th Cir.1995) (“The fact that judicial opinions have interpreted identical policy provisions differently may demonstrate ambiguity.”).
*214 Although I am inclined to conclude, like the Gingiss court, that the notice provision in the Franchise Agreement does not require a notice of the commencement of arbitration proceedings to be sent to the address of the designated representative, it is not necessary to reach a definitive conclusion on that question. Instead, it suffices to say that, at the very least, the notice provision contained in the Franchise Agreement cannot be read as unambiguously requiring notice of arbitration to be sent to the Owners at the address of the designated representative. Notices “required” under the Franchise Agreement include notice of default and notice of termination of the Agreement. The arbitration clause itself, however, does not include a notice requirement, but instead simply provides that claims will be arbitrated in accordance with the AAA’s commercial arbitration rules. Because the Franchise Agreement itself does not speak to the notice required to commence arbitration proceedings, it is far from certain that notice of arbitration is notice “required or permitted under” the Franchise Agreement.
The determination that the Franchise Agreement does not unambiguously require an arbitration notice to be sent to the address of the designated representative is fatal to the Owners’ claim that the arbitration award did not draw its essence from the contract. An arbitrator’s disregard of an unambiguous contract term may justify setting aside an arbitration award, but the failure to recognize an ambiguity or other mistake in interpreting the contract will not. See Three S Del., 492 F.3d at 528 (“An arbitration award ... does not fail to draw its essence from the agreement merely because a court concluded that an arbitrator has misread the contract.”); cf. United States Postal Serv. v. American Postal Workers Union, 204 F.3d 523, 527 (4th Cir.2000) (“[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.” (internal quotation marks omitted)).
In this case, the arbitrator found sufficient the notice of the arbitration proceeding, which was sent in accordance with the AAA’s rules to the last known address of the Owners,[3] and the arbitrator therefore proceeded to consider the merits of Choice’s claims. Although the arbitrator did not expressly consider whether the Franchise Agreement required a different method of notifying the Owners of the arbitration proceeding, that omission cannot justify vacating the award. “Courts of Appeals do not review the reasoning of arbitrators in determining whether their work draws its essence from the contract, but look only to the result reached; the single question is whether the award, however arrived at, is rationally inferable from the contract.” Apex Plumbing, 142 F.3d at 193 n. 5; see also Champion Int’l Corp. v. United Paperworkers Int’l Union, AFL-CIO, 168 F.3d 725, 729 (4th Cir.1999) (explaining that “an arbitrator is generally under no obligation to provide reasons for his decision”). It is rationally inferable from the award in favor of Choice that the arbitrator concluded that the notice provision of the Franchise Agreement did not govern the manner in which notice of arbitration must be provided. Because the *215 Franchise Agreement in my view does not unambiguously provide otherwise, the award drew its essence from the Franchise Agreement, and our inquiry should therefore end. See Duferco Int’l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 390 (2d Cir.2003) (“Even where explanation for an award is deficient or nonexistent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case.”).
I recognize that the record before us does not contain the answers to intriguing questions, such as whether Choice brought to the arbitrator’s attention the Franchise Agreement’s notice provision and why Choice did not elect to send the arbitration notice to the address of the designated representative and the addresses it had used when commencing the lawsuit. But as relevant as such questions would seem to be, I believe that our standard of review forecloses inquiry into these issues.
At issue in this appeal is whether the arbitrator’s award drew its essence from the Franchise Agreement, a question of law involving basic principles of contract interpretation. See Seabulk Offshore Ltd. v. American Home Assurance Co., 377 F.3d 408, 418 (4th Cir.2004) (“The interpretation of a written contract is a question of law that turns upon a reading of the document itself .... ”); see also In re Vital Basics, Inc., 472 F.3d 12, 17 (1st Cir. 2006) (explaining that a claim that an arbitration award violated the terms of the underlying contract “is a legal claim involving contract construction”). While the Owners contend the Franchise Agreement required the arbitration notice to be sent to the address of the designated representative and I believe it does not, the question is a purely legal one that is resolved by consideration of the language of the contract itself. See, e.g., Washington Metropolitan Area Transit Auth. v. Potomac Inv. Props., Inc., 476 F.3d 231, 235 (4th Cir.2007) (explaining that under Maryland law, “the purpose of contract interpretation is to determine and effectuate the intent of the parties, and the primary source for identifying this intent is the language of the contract itself’ (internal quotation marks and alteration omitted)). The questions that spring to mind when considering the facts of this case are interesting, but neither the questions themselves nor their answers shed any light on the meaning of Franchise Agreement. That these questions are not answered by the current record thus should not affect the disposition of this appeal.[4]
I would hold that the arbitration award drew its essence from the contract and that the district court erred by vacating the award. Accordingly, I dissent from Part II of the majority opinion.

. I agree that the requirements of diversity of jurisdiction have been satisfied and that the notice of appeal was timely filed. I also agree that the district court properly denied the Owners’ motion seeking attorney's fees and costs. Accordingly, I concur in Parts III and IV of the majority opinion.

. State law generally governs contract-interpretation issues arising in an arbitration dispute. See, e.g., Aceros Prefabricados, S.A. v. TradeArbed, Inc., 282 F.3d 92, 100 (2d Cir., 2002). In this case, the Franchise Agreement calls for the application of Maryland law.

. To the extent that the Owners contend the addresses used by Choice were not in fact the last addresses known to Choice, that argument is unavailing. See Champion Int’l Corp. v. United Paperworkers Int’l Union, AFL-CIO, 168 F.3d 725, 728 (4th Cir.1999) ("A court does not sit to hear claims of factual ... error by an arbitrator .... ” (internal quotation marks omitted)).

. If these questions were somehow relevant to the issues presented on appeal, it seems to me that the absence of any answers should lead not to the vacating of the arbitration award but instead to a remand to the arbitrator for clarification. See Cannelton Indus., Inc. v. District 17, United Mine Workers of America, 951 F.2d 591, 594 (4th Cir.1991) ("When an arbitrator does provide reasons for a decision and when those reasons are so ambiguous as to make it impossible for a reviewing court to decide whether an award draws its essence from the agreement, the court may remand the case to the arbitrator for clarification.”).